Patch v. King.

LEVI PATCH *versus* SAMUEL H. KING.

When a creditor has a note against two joint promisers, secured by mortgage upon real estate, and he acknowledges payment upon the margin of the record, from the promisers, and discharges the mortgage; the acts and declarations of one of the promisers may control and overcome the evidence of payment from the margin of the record, so that an action may be maintained upon the note against the other promiser.

Partial payments, made by one joint promiser upon a note, before the Revised Statutes went into operation, may prevent the statute of limitations from attaching as to the other.

If the principals upon a note, after it has become effectual in the hands of the payee, so alter their relations among themselves, that one becomes the mere surety of the other; this arrangement cannot restrict the rights of the payee.

ASSUMPSIT upon a note of hand, dated Nov. 9, 1832, for $1300, payable to plaintiff and signed by Jacob D. Brown and defendant as principals, and others as sureties. Plea, the general issue and statute of limitations. The action came on for trial before SHEPLEY, C. J., when it appeared, that the

action was commenced at the District Court, in 1842, and that the writ and note had been destroyed afterwards by fire. The plaintiff proved that there was such a note with two indorsements upon it; one in the year 1838, for one dollar, in the handwriting of Brown, and the other in the summer of 1840, for about $200, in the handwriting of Brown's clerk, who had since died.

The defendant read a copy of a deed of mortgage, Jacob D. Brown and defendant to plaintiff, dated September 4, 1834, and recorded September 6, 1834, conveying six thousand acres of land, to secure the note. Also, copy of discharge of same, on the margin of the record, acknowledging payment thereof, signed by the plaintiff on January 4, 1836. Also an obligation from Jacob D. Brown to defendant, dated April 6, 1835, engaging to save him harmless from the note. It also appeared that, before the mortgage was discharged, the plaintiff said that Brown told him it was his debt to pay, and that Brown offered to pay him all that was due as soon as he could go to Boston and back again, if he could raise the mortgage.

The case was taken from the jury by consent and submitted on this testimony, or so much as may be legal, to the decision of the Court, with power to enter judgment by nonsuit or default, as the rights of the parties may require.

*Shepley* and *Dana*, for defendant.

1. The payments by Brown on the note cannot operate to create a new debt against King, after it had once been paid or discharged. *Atkins* v. *Tredgold*, 2 B. & C. 23; *Bell* v. *Morrison*, 1 Pet. 371; *Jones* v. *Moore*, 3 Bin. 573; *Hackley* v. *Patrick*, 3 Johns. 536; *Walden* v. *Sherburne*, 15 *ib.* 409.

2. At the time of the alleged acknowledgments by Brown, there was no joint interest existing between him and the defendant. The debt had been paid and absolutely discharged. If the existence of the joint debt be established by other evidence, then the admission of one of the persons jointly liable will so far affect the other as to take the debt out of the operation of the statute of limitations. But the very existence of a joint debt is in issue here, and that cannot be proved by the

admission of one party. *Gray* v. *Palmer,* 1 Esp. 135; *Nicholls* v. *Dowding & al.* 1 Stark. R. 81; *Burgess* v. *Lane &* *al.* 3 Greenl. 165.

3. Before Patch discharged the debt and released the mortgage, he knew that King stood in the relation of a mere surety for Brown. Knowing this fact he put it out of his own power to collect the note, and out of the power of King to pay it and recover of Brown on his bond. This was sufficient to discharge King, even if the note had not actually been paid. *Pierce* v. *Whitney,* 9 Shepl. 113; *Leavitt* v. *Savage,* 4 Shepl. 72; *Rathbone* v. *Warren,* 10 Johns. 587; *Sprigg* v. *Bank of Mt. Pleasant,* 10 Peters, 257; *Greeley* v. *Dow,* 2 Metc. 176; *Gifford* v. *Allen & al.* 3 Metc. 255.

*Fessenden, Deblois & Fessenden,* for plaintiff.

1. The statute of limitations does not present a bar. *Getchell* v. *Heald,* 7 Greenl. 26; *Jackson* v. *Fairbanks,* 2 Hen. Black. 340; 5 Dane's Abridg. ch. 161, art. 9; *Whitcomb* v. *Whiting,* 2 Doug. 562.

2. The entry on the margin of the record, dated Jan. 4, 1836, by force of the statute of mortgages, operates only as a discharge of the mortgage and not of the debt. R. S. c. 125, § 28.

3. Such being the only operation of the statute, the residue of the paper or entry is a mere receipt, and may be explained, contradicted or rebutted, — *Gerish* v. *Washburn,* 9 Pick. 338, *Badger* v. *Jones,* 12 Pick. 371, — even if absolute in its terms. *Hunt* v. *Law,* 2 Johns. 378; *McKinsley* v. *Pearsall,* 3 Johns. 314; *Tobey* v. *Barber,* 5 Johns. 68.

4. The same evidence which contradicts the payment by Brown, binds King, so far as the plaintiff is concerned. *Getchell* v. *Heald,* 7 Greenl. 20; *Whitcomb* v. *Whitney,* 2 Doug. 562; 2 Starkie's Evid. 897; *Johnson* v. *Beardsonley,* 15 Johns. 3.

5. The obligation of April 6, 1835, is clearly inadmissible as evidence, being a matter with which the plaintiff had no connection, and he is in no wise bound by it. The defendant and Brown being principals, are jointly and severally bound. *Sprigg* v. *Bank of Mt. Pleasant,* 10 Pet. 257; *Paine* v.

*Packard & als.* 13 Johns. 174 ; *Nickols* v. *Parsons,* 6 N. H. 30.

The opinion of the Court, (HOWARD, J. taking no part in the decision, having been engaged in the case, and SHEPLEY, C. J. not concurring,) was delivered by

TENNEY, J. — This suit was commenced in 1842, and is upon a promissory note of hand, dated on Nov. 9, 1832, for the sum of $1300, signed by the defendant and one Jacob D. Brown, as principals, and other persons as sureties. An indorsement was made by Brown, in 1838, of one dollar, and another by his clerk, who has since died, of $200, in the year 1840. On Sept. 4, 1834, the two principals upon the note, conveyed in mortgage certain real estate to the plaintiff, as security for the note. Upon the margin of the record of this mortgage, are the words and figures following : —

"Oxford, ss. Jan. 4, 1836. I hereby acknowledge to have received of the within named Jacob D. Brown and Samuel H. King, the full and just sum, to secure the payment of which sum, the within mortgage was executed, and do therefore hereby discharge the same.              Levi Patch."

"Attest, Alanson Mellen, Register."

The plaintiff was proved to have said, that Brown told him, it was his debt to pay, and that Brown offered to pay him all which was due, as soon as he could go to Boston and back, if he could raise the mortgage. The plea of non-assumpsit, and the statute of limitations was relied upon in defence.

It is insisted that the acknowledgment of payment on the record, is proof of the discharge of the debt; and that the subsequent recognition by Brown of the existence of the note as an outstanding claim, cannot revive it against the defendant, especially as the plaintiff had declared subsequent to the execution of the mortgage, that it was his debt to pay.

If it can be shown, that a note of two joint promisers is paid, one of the makers cannot revive it, so as to create any liability in the other. A mortgage has for its basis, the contract, the obligation of which is intended to be secured; and

it ceases to have validity by the discharge of that contract. It is undoubtedly competent, for the parties to annul the collateral security without affecting the debt secured. And a deed of release of an estate conveyed in the mortgage, from the one having the right of the mortgagee, would not be conclusive proof of the payment of the debt secured thereby. The mortgagee may also discharge his claim, as provided in R. S. c. 125, § 28. This is similar in most respects to the statute of 1821, c. 39, § 1; which was in force when the mortgage in this case was discharged. This provides that " the mortgagee may also discharge his claim, by causing satisfaction and payment to be entered on the margin of the record of such mortgage in the register's office, and shall sign the same, which shall forever discharge and release the mortgage, and perpetually bar all actions to be brought thereupon, in any court of record. It was probably contemplated by the authors of this statute, that ordinarily the mortgage would continue effectual, as long as any part of the indebtedness secured by it, should remain ; and hence the form prescribed. The manifest purpose of the provision was to furnish and perpetuate the proof, that the incumbrance no longer existed, and that the constructive notice of the mortgage by the record, should be accompanied by that of the discharge. Accordingly the statute has declared expressly the effect of such a discharge, and it cannot have a more enlarged construction than was manifestly designed. And when we consider the object to be secured, and the language used limiting the discharge to that object, the acknowledgment of the receipt of payment cannot have given to it, a character and importance which it would not have, when unconnected with the discharge of the mortgage. And it is a well settled principle, that a receipt, simply acknowledging that a debt referred to therein, has been paid, is *prima facie* evidence only of such payment; and it is open to explanation. If so explained that its effect according to its terms is controlled, the debt is not to be regarded as having been discharged by the receipt, and revived by the controlling proof, but as always having subsisted, notwithstanding the receipt.

Patch *v*. King.

By the agreement of the parties, the determination of the facts as well as the law, is submitted to the Court upon the case reported. The entry made upon the margin of the record, unaffected by any other proof, is sufficient to show payment of the note, and it is to be ascertained by all the evidence, whether this acknowledgment is rebutted and controlled. The indorsements upon the note, may both be regarded as made by Brown, one being in his own and the other in the handwriting of his clerk. These were made after the discharge of the mortgage. The case exhibits nothing, which could constitute a reasonable motive in him, to make these indorsements at the time of their respective dates, unless it was in discharge *pro tanto* of a known indebtedness. So far as it regards Brown, therefore, no doubt can exist on this point. But he is not a party to the suit, and his liability is material for our present purpose, only as having an influence upon the question, whether the note is unpaid or not. There is no declaration or act of the defendant reported, which tends to show that he has admitted his continued indebtedness, since the discharge of the mortgage ; but there are facts and circumstances sufficient to lead us to the conclusion, that the note was not paid at the time of this discharge. The entry upon the record must be treated as an act of deliberation. The plaintiff must have gone to the registry of deeds, and there have made the discharge. This was evidently the result of an understanding between him and the principals upon the note. There was either an agreement, that the mortgage should be discharged, and the note remain effectual, or the money due thereon was actually paid. No attempt is made to explain, why the note should be permitted to remain uncanceled in the hands of the payee after it ceased to be obligatory, if it was really paid. If no collateral security had been given for its payment, and it was really intended to be outstanding, it is difficult to imagine a motive which could influence the plaintiff to give to the makers a written acknowledgment of full payment. But the note being secured by a mortgage upon real estate, there was an important object to be obtained by the entry, which was made upon the records. This

object was the discharge of the mortgage ; and it could be done without affecting in the least the personal security.   If the design of the parties to the transaction, when the entry was made upon the  record was for this purpose alone, they adopted  one of the modes provided by the statute for its accomplishment, and the purpose entertained was secured.

For  some purpose it might have been  desirable on  the part of  the principals on the note, that the incumbrance  should  be removed from the land, before the note secured should be paid ; and the  defendant has  shown by the declaration of the plaintiff,  that Brown offered to  pay him all which  was due, after his return from Boston, if the  estate could  be previously relieved from the mortgage.   It was not unreasonable that the plaintiff should have expected, that if Brown could  present in Boston, an unincumbered title  to  the  land, about  the  first  of January, 1836, when it was notorious as matter of history, that lands in Maine were believed  to possess  great value, and were much sought after by purchasers, he would  be able  to  pay all which was due  to  the plaintiff, and take  up  the  note.   The plaintiff had taken and held the same note for  a  considerable time, with no collateral security which the. case  discloses, and there is nothing, which shows a want of confidence in Brown's ability through the land, to obtain the means of payment after the discharge of  the mortgage.

Is this  action  barred  by  the statute of  limitations ?   The payments made by Brown and indorsed on the  note were  before the revision of the statutes, which took  effect in 1841, and the  provision in chap. 146, $ 20 and 24, are by the 27th section of the same chapter, to  have no effect thereon.   In this State, before  the  operation of the Revised Statutes, a new promise made by one  of two  joint promisers would  take the case out of the statute of limitations as to both.   *Greenleaf* v. *Quincy,* 3 Fairf. 14 ; *Pike* v. *Warren,* 3 Shepl. 390 ; *Dinsmore* v. *Dinsmore,* 8 Shepl. 433 ; *Shepley* v. *Waterhouse,* 9 Shepl. 497.

It is contended, that as Brown had made a contract with the defendant, on April 6, 1835, in which  he  engaged to save

harmless the defendant from all liability on the note in suit, which was known to the plaintiff, the doctrine that a surety is exonerated by the holder of a note, giving time upon consideration to a principal, without his consent or knowledge, is applicable to this case. It is not contended, that time was given in its ordinary acceptation to the principal, but that the note having been discharged by the entry upon the record, its effect upon the defendant, who was really at that time, as between him and Brown, a surety only, should be the same. This proposition cannot be sustained either by the facts or the law of the case. The entry on the record is all the evidence relied upon, to show a discharge of the debt. But by the fair import of this entry unconnected with other facts in the case, the payment was made by Brown and the defendant, and whatever was done, was equally known to both. But the debt was never in fact paid and the defendant had full knowledge that it was not. But if it were otherwise, we have found no case, which authorizes the application of this doctrine, when joint contractors, who were both principals, at the time the note first became effectual in the hands of the payee, have changed their relations afterwards, so that one has contracted with the other to pay the whole debt, although this change may be known to the holder. The holder of a note is not restricted in his rights by any arrangements of the makers among themselves, made after the note has passed from their hands, when he was not a party thereto. *Defendant defaulted.*

Reasons for not concurring by

SHEPLEY, C. J. — It appears to me, that this opinion does not fully meet and decide the most doubtful and delicate point in the case, viz : whether the acknowledgment of one of two joint debtors, that a debt is unpaid, is sufficient to explain a written receipt of payment in full of the debt, made by the creditor, and rebut that *evidence* of payment with respect to the other debtor.

It has, as the opinion states, been decided, that the acknowledgment of one joint debtor, that the debt is due, will rebut

the *presumption of law*, arising from the lapse of time and take the case as to both out of the statute of limitations.

But that seems to me to differ from the case of the introduction by a defendant of *prima facie proof* of actual payment, arising out of a written acknowledgment of the party, that the debt has been paid.

Suppose the defendant, King, had introduced a receipt of the plaintiff, stating that he had received payment in full of the note of King, could such proof be rebutted as to King, by the introduction of a written acknowledgment signed by Brown, that the debt had not been paid? This probably would not be contended, for one person could not destroy or explain the effect of a written discharge given to another.

In this case the written acknowledgment of the creditor states, that he has received payment of " Jacob D. Brown and Samuel H. King, the full and just sum to secure the payment of which the within mortgage was executed." The written acknowledgment is, that payment has been received of both ; is it full proof that it has not been received, that one admits that the debt is not paid but due ?

I am not aware, that the acknowledgment of one of two joint debtors, has ever been decided to affect the rights of the other, further than to rebut a *presumption of law*. And that effect has been considered as so far undesirable or unjust, that the Revised Statutes have destroyed it.

If the rule be now established, that the acknowledgment of one will rebut *prima facie evidence* of payment arising from a written statement of the creditor, that his debt has been paid not only as it respects himself, but as it respects the other, that rule will continue to be good in a case occurring since the Revised Statutes, for they will not operate upon such a case or rule. And the result will be in a case like the present, happening since the Revised Statutes were in force, that payment by one of two joint debtors, will not rebut the *presumption of law*, as to the other, but will rebut *prima facie proof* of payment arising from a receipt in full, not only as respects himself, but as it respects the other. It seems to me, that such

a condition of the law, would be somewhat revolting to one's common sense. It appears to me, that this point has not been considered in the opinion, and that it deserves and must have a sober consideration and decision, and I do not concur because it has not received it.